IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RALPH SMITH, IGNATIUS HARRIS, individually and on behalf of all others similarly situated,<br>        Plaintiffs,<br><br>vs.<br><br>ALLEGHENY TECHNOLOGIES, INC., and STROM ENGINEERING CORPORATION,<br>        Defendants, | Civil Action No. 17-911<br><br>Magistrate Judge Robert C. Mitchell/<br>District Judge Mark R. Hornak |

**REPORT AND RECOMMENDATION**

ROBERT C. MITCHELL, United States Magistrate Judge.

**I.      RECOMMENDATION**

Presently before the Court are (1) a motion to dismiss filed by Defendant Allegheny Technologies, Inc. (ATI); (2) a motion to strike Plaintiffs' complaint filed by Defendant Strom Engineering Corporation (Strom); (3) an expedited motion to conditionally certify a collective action filed on behalf of Plaintiffs Ralph Smith and Ignatius Harris (collectively, "Plaintiffs"), and those similarly situated; and (4) a joint motion to stay Plaintiffs' expedited motion, filed by ATI and Strom (collectively, "Defendants"). For the following reasons, it is respectfully recommended that (1) ATI's motion to dismiss be denied; (2) Strom's motion to strike be denied; (3) Plaintiffs' motion to conditionally certify a collective action be granted; and (4) Defendants' motion to stay be denied as moot.

**II.     REPORT**

    a.   <u>Factual and Procedural History</u>

ATI is a Delaware corporation headquartered in Pittsburgh, Pennsylvania, which operates metal manufacturing facilities in over 30 locations throughout the United States. Strom is a Minnesota corporation that provides replacement labor staffing to employers involved in labor

1

disputes. On August 15, 2015, ATI initiated a lockout of its unionized workforce at 12 of its flat rolled product segment facilities, including plants in Pennsylvania and Oregon. ATI contracted with Strom to provide temporary labor during the lockout.

Plaintiff Smith was hired by Strom as part of the replacement workforce for an ATI facility in Pennsylvania, while Plaintiff Harris was hired by Strom as part of the replacement workforce for an ATI facility in Oregon. During their employment, the temporary workers, including Plaintiffs, were housed in accommodations local to the ATI plant to which they were assigned. Every morning the workers, including Plaintiffs, would meet at a designated location outside of the plant and travel together by bus or van to their designated ATI facility. At the conclusion of each shift, the temporary workers, again including Plaintiffs, would assemble and travel together by bus or van off plant property and back to the designated meeting location. This travel involved crossing the union picket lines twice daily. On average, travel to and from the ATI facilities took 1.5 to 2 hours daily during the pendency of the lockout. The ATI lockout ended in March of 2016 when ATI and the United Steelworkers (USW) entered into a new labor agreement.

On July 10, 2017, Plaintiffs initiated this action by filing a complaint in this Court on behalf of themselves individually, "and all others similarly situated," raising the following claims: (1) a violation of the Fair Labor Standards Act (FLSA); (2) a violation of the Pennsylvania Minimum Wage Act (PMWA); (3) unjust enrichment with respect to Smith and all other Pennsylvania plaintiffs; and (4) a violation of the Oregon Minimum Wage Law. (ECF No. 1). The crux of Plaintiffs' argument is that ATI and Strom are in violation of federal and state law because they failed to compensate the replacement workforce for time spent traveling to and from their assigned ATI facilities.

On August 3, 2017, ATI filed a motion to dismiss Plaintiffs' complaint for failure to state a claim. See Fed. R. Civ. P. 12(b)(6). Specifically, ATI argues that existing federal and state law exempts employers from FLSA liability for time workers spend commuting and, therefore, the complaint should be dismissed. (ECF No. 13). Plaintiffs respond by noting that the law upon which ATI relies provides that commute time is compensable when it is a "principal activity" or integral to the position for which the employee was hired, and maintains that this factual distinction raises a plausible claim for relief. (ECF No. 35). Accordingly, Plaintiffs request that ATI's motion be denied. The motion has been fully briefed and is ripe for disposition. (ECF No. 35, 38).

On August 3, 2017, Strom filed a motion to strike Plaintiffs' complaint, arguing that it fails to comply with Federal Rules of Civil Procedure 8(a)(2), 8(d)(1), and 12(f). (ECF No. 16). The motion has been fully briefed and is ripe for disposition. (ECF No. 36, 39).

In addition, Plaintiffs have filed an expedited motion to conditionally certify this matter as an FLSA collective action in order to facilitate notice to potential plaintiffs. (ECF No. 11). Defendants oppose this certification and have moved to stay certification pending outcome of the dispositive motions filed in this matter. (ECF No. 25). Plaintiffs' motion has been fully briefed and is ripe for disposition. (ECF No. 33, 34, 40).

    b. ATI's Motion to Dismiss

A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. See Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). The United States Supreme Court opinions in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007) and, more recently, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), have shifted pleading standards from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the

possibility of relief to survive a motion to dismiss. With the Supreme Court instruction in mind, the Court of Appeals for the Third Circuit has outlined a two-part analysis that courts should utilize when deciding a motion to dismiss for failure to state a claim. First, the factual and legal elements of a claim should be separated. In other words, while courts must accept all of the complaint's well-pleaded facts as true, they may disregard any legal conclusions. Second, courts then decide whether the facts alleged in the complaint are sufficient to demonstrate that the plaintiff has a "plausible claim for relief." Iqbal, 129 S.Ct. at 1950. That is, a complaint must do more than allege the entitlement to relief; its facts must show such an entitlement. Fowler v. UPMC Shadyside, 578 F.3d 203, 210–211 (3d Cir. 2009).

ATI first challenges Plaintiffs' ability to state a claim under the FLSA.[1] Pursuant to the FLSA, "[n]o employer shall employ any of his employees ... for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). Employers who violate this subsection are "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Relevant to this case, the Portal-to-Portal Act creates a narrow class of exemptions for employer liability under the FLSA. The Act provides as follows.

> No employer shall be subject to any liability or punishment under the [FLSA]… on account of the failure of such employer to pay an employee minimum wages, or to pay an employee overtime compensation, for or on account of any of the following activities of such employee engaged in on or after May 14, 1947—

---

[1] ATI concedes that analysis of Plaintiffs' arguments with respect to the Oregon minimum wage statute and the claims of unjust enrichment must be conducted under the relevant portions of the FLSA. (ECF No. 14 at 20).

> **(1)** walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and
>
> **(2)** activities which are preliminary to or postliminary to said principal activity or activities,
>
> which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities. For purposes of this subsection, the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of the employer's vehicle is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C.A. § 254(a).

> The Supreme Court
>
> has consistently interpreted the term 'principal activity or activities' [to] embrac[e] all activities which are an 'integral and indispensable part of the principal activities.' Our prior opinions used those words in their ordinary sense. The word 'integral' means '[b]elonging to or making up an integral whole; constituent, component; *spec*[*ifically* ] necessary to the completeness or integrity of the whole; forming an intrinsic portion or element, as distinguished from an adjunct or appendage.' And, when used to describe a duty, 'indispensable' means a duty '[t]hat cannot be dispensed with, remitted, set aside, disregarded, or neglected.' An activity is therefore integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities.

Integrity Staffing Sols., Inc. v. Busk, 135 S. Ct. 513, 517 (2014) (citations and some quotation marks omitted; emphasis in original). Relative to determining if activity is exempt under the Act, "[t]he integral and indispensable test is tied to the productive work that the employee is *employed to perform*." Id. at 519 (emphasis in original).

In its motion, ATI systematically addresses, and rejects, Plaintiffs' FLSA claim on its merits. (ECF No. 14 at 3-17). However, this Court is mindful that

5

> [a] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. The Supreme Court's Twombly formulation of the pleading standard does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.

McTernan v. City of York, PA, 564 F.3d 636, 646 (3d Cir. 2009) (citations omitted).

Accepting the well-pleaded allegations in the complaint as true, as this Court must, Plaintiffs establish the following. In August of 2015, due to a contract dispute with its unionized workforce, ATI initiated a lockout of its union employees. (ECF No. 1 ¶ 36, 38). In response to the lockout, the USW organized a protest, which included picketing and rallying at the gates of ATI facilities. (ECF No. 1 ¶ 44). Strom is a company engaged in the business of "strike staffing." (ECF No. 1 ¶ 15). Strom's promotional materials set forth a five-phase approach to strike staffing, including locating, accommodating, and training temporary employees, "secur[ing] safe transportation across picket lines," and properly disbanding the temporary workforce once the labor dispute resolves. (ECF No. 1 ¶ 20). Strom's promotional materials acknowledge that placing pressure on union leaders is a consideration that factors into an employer's decision to hire temporary workers during labor disputes. (ECF No. 1 ¶ 21).

ATI contracted with Strom to hire temporary laborers, including Plaintiffs, to keep ATI's manufacturing plants open and operational during the union lockout. (ECF No. 1 ¶¶ 50, 60). The terms of such employment were made clear in classified postings, which specifically highlighted the "LABOR DISPUTE SITUATION" and expressly informed applicants that "EMPLOYEES WILL BE TRANSPORTED ACROSS A PICKET LINE." (ECF No. 1 ¶ 58) (capitalization in original). Defendants provided accommodations for the temporary workforce. (ECF No. 1 ¶ 76). Temporary workers were paid on an hourly basis and were provided a *per diem*. (ECF No. 1 ¶ 75). Wages and work hours were determined by Defendants. (ECF No. 1 ¶¶ 53-55, 66). In order to

enter their assigned ATI facility, the temporary workers, including Plaintiffs, were required to assemble at a designated location, sign in, board a van or bus controlled by Defendants and driven by a member of the temporary workforce, and cross the union picket line at the entrance to the facility. (ECF No. 1 ¶ 82). Similarly, at the end of each shift, the temporary workers would assemble, board vans, and cross the picket line to leave their designated ATI facility and return to the central meeting location. (ECF No. 1 ¶ 78). During orientation sessions, the temporary workers, including Plaintiffs, were instructed on how to cross the picket lines safely by not engaging with or responding to the union protestors. (ECF No. 1 ¶ 88). The process necessary to enter and exit ATI's facilities across the picket lines during the lockout took approximately 1.5 to 2 hours each day. (ECF No. 1 ¶ 81). The temporary workers were not paid for this time. Id.

Plaintiffs' well-pleaded allegations establish a plausible claim that travel across the picket lines was integral to the productive work the temporary workers were hired to perform. Accordingly, because Plaintiffs have, at this stage of the pleadings, alleged facts sufficient to state a claim for relief under the FLSA that is plausible on its face, ATI's motion to dismiss with respect to Counts I, III, and IV should be denied.

With respect to Count II, the PMWA requires employeers to pay employees an enumerated minimum wage, plus overtime pay of "not less than one and one-half times the employe's [(sic)] regular rate" should the employee work in excess of forty hours in a workweek. 43 P.S. § 333.104 (c). Employers who fail to pay wages as outlined under the PMWA are liable to the employee for unpaid wages. 43 P.S. § 333.113.

> The PMWA regulations define "hours worked" to include "time spent in traveling as part of the duties of the employee during normal working hours and time during which an employee is employed or permitted to work." 34 Pa. Code § 231.1 ("Travel Regulation"). Consequently, travel time is compensable under the PMWA if it is (1) "part of the duties of the employee" and (2) occurs "during normal working hours." Id.

Espinoza v. Atlas R.R. Constr., LLC, 657 F. App'x 101, 103 (3d Cir. 2016). In Espinoza, the Third Circuit interpreted these provisions to mean that "for travel to be considered a duty of employment [under the PMWA], it cannot merely be a necessary means of accessing the employee's job; it must, instead, be an integral feature of the job itself." Id. at 106–07. Accepting as true the well-pleaded factual allegations outlined above, Plaintiffs have raised a claim for relief under the PMWA that is plausible on its face. That is, the facts of the complaint allege that the daily travel requirements were part of the duties for which Plaintiffs were employed. Accordingly, it is recommended that ATI's motion be denied in its entirety.

    c. Strom's Motion to Strike

Strom asks this Court to strike Plaintiffs' complaint without prejudice for failure to comply with the pleading requirements set forth in Federal Rules of Civil Procedure 8(a)(2) and 8(d)(1). (ECF No. 16 at 3-11). Citing to a number of unpublished decisions where district courts have granted similar motions, Strom argues that paragraphs 16, 17, 18, 23, 24, 25, 27, 28, 40, 41, 54, 83, and 103 of the instant the complaint contain "excessive, burdensome, and argumentative details" which are contrary to the Rules' requirements that pleadings must be short, simple, and direct. (ECF No. 16 at 3, 7-11).[2]

The Federal Rules of Civil Procedure provide that a district court may, either *sua sponte* or upon the motion of either party, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Our District Court has held that

---

[2] Only one of the relied-upon cases was decided post-Twombly and Iqbal. See Thompson v. Hens-Greco, No. CV 16-1100, 2016 WL 7046959, at *3 (W.D. Pa. Nov. 8, 2016) (granting a motion to dismiss and striking as excessive plaintiff's 522-paragraph amended complaint on the basis that it contained immaterial and impertinent matter unrelated to the issues raised).

> [a] decision to grant or deny a motion to strike a pleading is vested in the trial court's discretion. The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters.
>
> Motions to strike are decided on the pleadings alone. Because a motion to strike is not favored, a court will generally not grant such a motion unless the material to be stricken bears no possible relationship to the controversy and may cause prejudice to one of the parties. In deciding the motion, a court should also consider the liberal pleading standards of [Federal] Rule [of Civil Procedure] 8 and the lack of a developed factual record at this early stage of litigation.

Simmons v. Nationwide Mut. Fire Ins. Co., 788 F. Supp. 2d 404, 407 (W.D. Pa. 2011) (citations omitted).

A review of the complained-of averments in Plaintiffs' complaint demonstrates the factual assertions are arguably related to Plaintiffs' claims against Strom. Although Strom expresses a concern that the factual assertions will potentially prejudice a finder of fact, such a claim is premature at this stage of the litigation and any perceived prejudice can be remedied in advance of trial. Given the general disfavor of such motions and the fact that the complained-of averments herein do not rise to the level that a drastic measure as is necessary, it is recommended that Strom's motion be denied. See DeLa Cruz v. Piccari Press, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) ("Striking a pleading is a drastic remedy to be resorted to only when required for the purposes of justice and should be used sparingly") (citation omitted).

    d.   Plaintiffs' Expedited Motion to Conditionally Certify an FLSA Collective Action

Plaintiffs seek an expedited order of court for the purposes of notifying potential collective members of their right to join in the instant litigation. (ECF No. 11). The FLSA provides, in relevant part, that:

> [a]ny employer who violates [the minimum wage provisions] of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages…. An action to recover [such] liability ... may be maintained against any employer ... in any ... court of competent

9

> jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

29 U.S.C. § 216(b). The statute explains that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Id.

The Third Circuit has adopted the following standard with respect to conditional collective certification.

> In deciding whether a suit brought under § 216(b) may move forward as a collective action, courts typically employ a two-tiered analysis. During the initial phase, the court makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff. If the plaintiff carries her burden at this threshold stage, the court will "conditionally certify" the collective action for the purposes of notice and pretrial discovery. In the absence of statutory guidance or appellate precedent on the proper definition of "similarly situated," a divergence of authority has emerged on the level of proof required at this stage. Some trial courts within our circuit have allowed a plaintiff to satisfy her burden simply by making a "substantial allegation" in her pleadings that she and the prospective party plaintiffs suffered from a single decision, plan or policy, but the majority of our circuit's trial courts have required the plaintiff to make a "modest factual showing" that the proposed recipients of opt-in notices are similarly situated.
>
> Under the "modest factual showing" standard, a plaintiff must produce some evidence, "beyond pure speculation," of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees. We believe the "modest factual showing" standard—which works in harmony with the opt-in requirement to cabin the potentially massive size of collective actions—best comports with congressional intent and with the Supreme Court's directive that a court ascertain[ ] the contours of [a collective] action at the outset.

Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 192–93 (3d Cir. 2011), rev'd on other grounds, 569 U.S. 66 (2013) (citations, some quotation marks, and footnotes omitted); see also Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 536 (3d Cir. 2012).

Defendants respond to Plaintiffs' motion by reiterating the position outlined by ATI above, that Plaintiffs' claims for relief are, on their face, barred by state and federal law, and conclude

10

that, since Plaintiffs complaint should be dismissed, Plaintiffs' motion to certify should also be denied. (ECF No. 34 at 11-29; ECF No. 33 at 9-10). In light of this Court's disposition of Defendants' dispositive motions, this argument must fail.

In the alternative, Defendants argue that Plaintiffs have failed to meet their burden of making a modest factual showing because they have failed to demonstrate any commonality that would allow this Court to find the putative plaintiffs similarly situated to Smith and Harris. (ECF No. 34 at 11-29; ECF No. 33 at 9-10). However, Plaintiffs' pleadings and the documents attached thereto demonstrate that Plaintiffs have met the lenient standard outlined above: they have produced, via affidavits of other putative class members, evidence of alleged FLSA violations with respect to failure to compensate temporary workers for travel to and from ATI's plants during the 2015-2016 lockout. (ECF No. 11-9, 11-10, 11-11; ECF No. 40-14, 40-15). Thus, the allegations contained in those affidavits are sufficient to provisionally categorize the putative plaintiffs as similarly situated to Smith and Harris. Moreover, this Court is cognizant that "the 'certification' we refer to here is only the district court's exercise of [its] discretionary power … to facilitate the sending of notice to potential class members" and such initial certification does not preclude later decertification if discovery shows that certification is improper:

> [a]fter discovery, and with the benefit of a much thicker record than it had at the notice stage, a court … then makes a conclusive determination as to whether each plaintiff who has opted in to the collective action is in fact similarly situated to the named plaintiff. This second stage is less lenient, and the plaintiff bears a heavier burden. Should the plaintiff satisfy her burden at this stage, the case may proceed to trial as a collective action.

Symczyk, 656 F.3d at 194 (citation omitted).

Accordingly, because Plaintiffs have satisfied their initial burden of producing some evidence of a factual nexus between Defendants' refusal to pay wages for time the temporary workforce spent commuting to work and the effect this policy had on other employees, it is the

recommendation of this Court that Plaintiffs' motion be granted, that the collective be conditionally certified, and that Plaintiffs' proposed notice plan be approved. In light of this result, it is further recommended that Defendants' motion to stay be denied.

    e. Conclusion

For the reasons set forth in this Report and Recommendation, it is respectfully recommended that (1) ATI's motion to dismiss be denied (ECF No. 13); (2) Strom's motion to strike be denied (ECF No. 15); (3) Plaintiffs' motion to conditionally certify a collective action be granted (ECF No. 11) and the proposed notice plan be approved (ECF No. 11-3); and (4) Defendants' motion to stay be denied. (ECF No. 25).

In accordance with Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules pertaining to Magistrate Judges, the parties are permitted until December 11, 2017 to file written objections to this Report and Recommendation. Failure to do so may waive the right to appeal. Any party opposing written objections shall have fourteen days after the service of such objections to respond thereto.

DATED this 27th day of November, 2017.

BY THE COURT:

ROBERT C. MITCHELL
United States Magistrate Judge