# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RALPH SMITH, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) 2:17-cv-00911 |
| v. | )<br>)<br>) |
| ALLEGHENY TECHNOLOGIES, INC., et al., | )<br>)<br>) |
| Defendants. | |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**.

This matter is before the Court on Defendants Allegheny Technologies, Inc., ("ATI") and Strom Engineering Corporation's ("Strom's") objections (ECF Nos. 47 & 48) to the November 27, 2017, Report and Recommendation ("R&R") of Magistrate Judge Robert C. Mitchell (ECF No. 45). The R&R recommends that the Court: (1) deny ATI's Motion to Dismiss (ECF No. 13); (2) deny Strom's Motion to Strike (ECF No. 15); (3) grant Plaintiffs' Expedited Motion to Conditionally Certify a Collective Action (ECF No. 11); and (4) deny Defendants' Motion to Stay Plaintiffs' Expedited Motion (ECF No. 25) as moot.

Plaintiffs filed an omnibus response to Defendants' objections (ECF No. 49), and this Court held oral argument on January 29, 2018. Also before the Court is Plaintiffs' Motion for Equitable Tolling of its Expedited Motion to Certify (ECF No. 50), which has been fully briefed. The objections to the R&R and the pending motions are ripe for disposition.

The factual background and procedural history of this case, along with the well-known legal standard for ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), is accurately described in the R&R and will not be repeated here. (*See* R&R, ECF No.

1

45, at 1–4.) In resolving a party's objections, the Court conducts a de novo review of any part of the R&R involving a dispositive motion that has been properly objected to. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the recommended disposition, as well as receive further evidence or return the matter to the Magistrate Judge with instructions. *Id.*

Upon careful review of the Complaint, all pending motions and the parties' briefs in connection with those motions, the R&R, and the objections and briefs in support thereof and in opposition thereto, the Court concludes that Plaintiffs' allegations fail to state any plausible claim that their time spent commuting across the union picket line was compensable under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, as amended by the Portal-to-Portal Act of 1947, § 251 *et seq.*, and under parallel provisions of Pennsylvania and Oregon state law. Accordingly, the Court declines to adopt the R&R, and for the reasons that follow, ATI's Motion to Dismiss (ECF No. 13) is granted as to both ATI and Strom.[1] Because this motion is dispositive,

---

[1] Strom filed a Motion to Strike certain assertions in the Complaint, ECF No. 15, but it did not formally join ATI's Motion to Dismiss. Despite this, Strom joined in ATI's objections to the R&R on this point (Def. Strom's Obj. to R&R, ECF No. 48, at 3 n.1), and all parties, including Plaintiffs, have appeared to treat the Motion to Dismiss as a joint motion between both Defendants. (*See* Pls.' Mem. Opp'n to Mot. to Dismiss, ECF No. 35, at 8 n.1 ("Neither party appeared to join in the other parties' motion. . . . Plaintiffs assume, however, that the Defendants are coordinating their efforts.").)

The Court is puzzled by this somewhat piecemeal litigation approach on Strom's part. Nevertheless, the grounds in favor of dismissal raised in ATI's Motion are common to both Defendants, and Plaintiffs fully responded to these arguments in its briefings. *See Coulter v. Unknown Prob. Officer*, 562 F. App'x 87, 89 n.2 (3d Cir. 2017) (affirming district court's sua sponte dismissal of non-moving defendant where the grounds raised by the moving defendants were common to all defendants and the plaintiff had an opportunity to respond to the moving defendants' arguments); *Sims v. Gregg*, No. 15-cv-5426, 2017 WL 783748, at *7 (E.D. Pa. Feb. 28, 2017) (sua sponte dismissing complaint against both moving and non-moving defendants where claims were time barred); *Fleck v. Univ. of Pa.*, No. 12-cv-3765, 2013 WL 12141349, at *7 (E.D. Pa. Feb. 20, 2013) ("Plaintiffs' failure to offer any facts of 'other similarly situated individuals or groups' is fatal to their Equal Protection claims against all defendants in this matter, and since plaintiffs were adequately noticed of this possible basis for the dismissal of this claim in the Penn defendants' motion to dismiss, we will dismiss it against all moving and non-moving defendants . . . ." (emphasis in original)). Therefore, because Plaintiffs' Complaint fails to state a claim against Strom for identical reasons as against ATI, the Court will consider ATI's Motion to Dismiss as a joint motion between both Defendants and sua sponte dismiss the claims against Strom.

the remaining pending motions are denied as moot, and the Plaintiffs' Complaint is dismissed with prejudice.[2]

## I. Count I: FLSA

The FLSA requires employers to pay employees overtime compensation for each hour worked in excess of forty hours in each work week. *See* 29 U.S.C. § 207(a)(1). Among other exemptions, the Portal-to-Portal Act clarifies that employers are not required to compensate employees for their commute to and from work[3] unless that commute is either the "principal activity" for which the employee is employed or is "integral and indispensable" to such a principal activity. *See* 29 U.S.C. § 254(a); *Integrity Staffing Sols., Inc. v. Busk*, 135 S. Ct. 513, 516–17 (2014). An activity is "integral and indispensable" to the principal activities that an employee is employed to perform "if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing*, 135 S. Ct. at 517.

### A. Principal Activity of Employment

The Court concludes that Plaintiffs' travel time across the picket line is noncompensable commuting time. First, the commute was not the "principal activity or activities which [the] employee is employed to perform." 29 U.S.C. § 254(a)(1). The Department of Labor has further clarified what constitutes a principal activity:

> [I]n order for an activity to be a "principal" activity, it need not be predominant in some way over all other activities engaged in by the employee in performing his job . . . . The "principal" activities referred to in the statute are activities which the employee is "employed to perform" . . . . Congress intended the words "principal

---

[2] For the reasons set forth in this Memorandum Opinion, the Court concludes that given the contours of the applicable statutory and decisional law, any amendment would be futile.

[3] "'Walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and activities which are preliminary to or postliminary to said principal activity or activities' are excluded from FLSA's protections by the Portal-to-Portal Act; employers need not pay employees overtime or minimum wage for such activity." *Adams v. United States*, 471 F.3d 1321, 1325 (Fed. Cir. 2006) (quoting 29 U.S.C. § 254(a)).

3

activities" to be construed liberally in the light of the foregoing principles to include any work of consequence performed for an employer, no matter when the work is performed.

29 C.F.R. § 790.8. Accordingly, the Court will liberally construe the term "principal activities" to include "any work of consequence" that Plaintiffs performed for Defendants. *Id.*

As alleged in Plaintiffs' Complaint, Plaintiffs' job duties included "pressing buttons, operating a crane, lifting materials on to and off of machines, welding, and other repetitive and rote manual labor tasks." (Compl., ECF No. 1, ¶ 73.) Plaintiffs are steelworkers; the principal activity for which they were hired, and the work of consequence they performed for their employer, was to make steel while the regular steelworkers at ATI's facilities were locked out.

Plaintiffs do not contest that they were hired to make steel, but assert that an additional principal activity for which they were hired was to serve as economic weapons to put pressure on the labor union—specifically, by crossing the union picket line and keeping the ATI steelmaking facilities open during the lockout. As the Complaint alleges, "ATI and Strom's purpose behind requiring Plaintiffs and Class Members to travel in Strom vans was to safely transport them past the USW[4] picket lines and to their ATI worksites, in order to pressure the USW into accepting ATI's labor bargaining demands while maintaining ATI's business operations." (*Id.* ¶ 83.)

Plaintiffs are correct that an employee can have more than one principal activity. *See* 29 U.S.C. § 254(a)(1) (referring to "principal activity *or activities*" (emphasis added)); 29 C.F.R. § 790.8 ("[A]n employee may, for purposes of the Portal-to-Portal Act[,] be engaged in several 'principal' activities during the workday."). But to the extent hiring Plaintiffs as replacement workers weakened the labor union's collective bargaining power (a theory the Court will accept

---

[4] As explained in the Complaint, "USW" is the union involved in the ATI labor dispute: the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied industrial and Service Workers International Union, AFL-CIO, CLC. (*See* Compl., ECF No. 1, ¶ 32.)

4

as true for the purposes of this Motion to Dismiss), it was because the replacement workers kept the steelmaking business running by making steel—not simply because Plaintiffs engaged in the act of crossing the picket line. More directly, if Plaintiffs had crossed the picket line but did not go on to produce steel, there would not have been any additional economic pressure to accept ATI's labor bargaining demands. Conversely, if ATI managed to continue making steel without anyone crossing the picket line, the union's bargaining power would have been identically weakened even without the commute by anyone in Strom's vans. In short, the only source of economic pressure that the replacement workers placed on the union was from doing steel work, and not from the act of crossing the picket line in and of itself. Accordingly, even accepting the factual allegations of the Complaint as true and liberally construing "principal activities" to mean any work of consequence performed for an employer, crossing the picket line in and of itself could not be "the" or "a" principal activity for which Plaintiffs were engaged, as the Complaint itself demonstrates.[5]

## B. Integral and Indispensable Test

Under the Portal-to-Portal Act and the Supreme Court's decision in *Integrity Staffing*, the question then becomes whether the required commute across the picket line in Strom's vans was integral *and* indispensable to Plaintiffs' principal activity—that is, the productive work of making

---

[5] To conclude otherwise would in reason and logic make the act of going to work, any work, a "principal activity," exactly the result that the Portal-to-Portal Act disclaimed. Other courts have concluded that commuting time, even when an employer dictates the terms of that commute, is not ordinarily compensable under the Portal-to-Portal Act. For example, in *Adams v. United States*, federal law enforcement officers asserted that the time they spent commuting to and from work in government-owned police vehicles was compensable because commuting in those vehicles was a condition of their employment, and the officers were under various requirements during their commuting time: they were required to have their weapons and other law enforcement-related equipment on them, to have on and monitor their vehicles' communication equipment, and they were not allowed to run any personal errands in their government vehicles—their commute had to "proceed directly from home to work and back again without unauthorized detours or stops." 417 F.3d at 1323. The Federal Circuit upheld summary judgment in favor of the government (and against the officers) and held that under the Portal-to-Portal Act, "commuting done for the employer's benefit, under the employer's rules, is noncompensable if the labor beyond the mere act of driving the vehicle is *de minimis*." *Id.* at 1328.

steel. The terms "integral" and "indispensable" are used in their ordinary sense. *Integrity Staffing*, 135 S. Ct. at 517. As the Supreme Court explained, integral means "[b]elonging to or making up an integral whole; constituent, component; spec[*ifically*] necessary to the completeness or integrity of the whole; forming an intrinsic portion or element, as distinguished from an adjunct or appendage," and an indispensable duty is one "[t]hat cannot be dispensed with, remitted, set aside, disregarded, or neglected." *Id.* An activity that is "two steps removed" from an employee's productive work is not integral and indispensable, and is therefore noncompensable. *Id.* at 518.

The Court concludes that taking the allegations of the Complaint as true, they do not demonstrate that Plaintiffs' required commute across the picket line was integral and indispensable to Plaintiffs' work as steelworkers. Although Plaintiffs' commute was certainly not "ordinary" in the sense that a typical employee does not need to travel across a picket line to get to work, the Court is unconvinced that this fact makes Plaintiffs' travel any more integral to its productive work for these purposes than a typical steelworker who commutes to ATI's facilities in a non-labor dispute setting. Plaintiffs assert that crossing the picket line was integral to maintaining ATI's business operations and is therefore compensable, but also disclaimed at oral argument that the natural and probable consequence of the Court accepting this argument would be to make traveling to work during a labor dispute compensable time for any employee. Beneath this argument lies the apparent crux of Plaintiffs claim: that although commuting time, or even commuting across a picket line, is not ordinarily compensable, it is in this case because (1) Strom and ATI required Plaintiffs to cross the picket line in a particular way (here, in Strom's vans), and (2) safely transporting replacement workers across picket lines is a key to Strom's business model and provided a collective-bargaining benefit to ATI. Both of these arguments fail to get around the directives of the Portal-to-Portal Act.

First, the Supreme Court's decision in *Integrity Staffing* foreclosed any argument that crossing the picket line is compensable because it was required by ATI or Strom, or because it provided a collateral benefit to Defendants. A court "err[s] by focusing on whether an employer *required* a particular activity. The integral and indispensable test is tied to the productive work that the employee is *employed to perform*." 135 S. Ct. at 519 (emphasis in original). "If the test could be satisfied merely by the fact that an employer required an activity, it would sweep into 'principal activities' the very activities that the Portal-to-Portal Act was designed to address. . . . A test that turns on whether the activity is for the benefit of the employer is similarly overbroad." *Id.*

The proper question is whether commuting in Strom's vans was integral and indispensable to Plaintiffs' productive work of making steel—and the Court concludes it is not, at least not with respect to the FLSA analysis post-*Integrity Staffing*. Defendants could eliminate the requirement that Plaintiffs commute to the ATI facilities in Strom's vans and allow Plaintiffs to commute to work on their own, and the method of locomotion into the plant would have no obvious effect on Plaintiffs' ability to make steel and maintain ATI's business operations. This compels the Court's conclusion that Plaintiffs' method of commuting across the picket line is not indispensable to the productive work of making steel. Similarly, and somewhat puzzlingly, Plaintiffs asserted at oral argument (in response to the Court's hypothetical question) that if Strom's van broke down one day and the replacement workers had to walk to work together, this travel time walking across the picket line *would not* be compensable, whereas the same travel on all of the days where the van functioned properly would be compensable. To suggest that what is integral and indispensable to the principal activity that Plaintiffs were employed to perform can vary by the day based on the working order of Strom's vans demonstrates that the travel requirement (or more precisely, the

7

mode of that travel) was neither integral nor indispensable to Plaintiffs' productive work as steelworkers.[6]

Second, Plaintiffs make much of the fact that transporting replacement workers across picket lines is a key to Strom's business model and is (according to Plaintiffs) the entire reason ATI hired Strom. The Complaint quotes Strom's website, which states, "When you utilize our comprehensive industrial strike staffing services, we will determine your business's unique needs, locate, accommodate, and train qualified workers, secure safe transportation across picket lines, and follow the appropriate protocol for strike staffing disbandment after a new labor contract has been approved." (Compl., ECF No. 1, ¶ 20.) Plaintiffs allege that because Strom was hired to transport the replacement workers across the picket line, the time Plaintiffs spend being transported should be compensable. But this argument conflates *Strom's* principal activities with *Plaintiffs'* principal activities. Unlike Plaintiffs, Strom's principal activities did not include producing steel; rather, according to Plaintiffs' Complaint, Strom located, accommodated, trained, transported, and disbanded the replacement workers. This does not mean Plaintiffs must be compensated because crossing the picket line benefitted Strom or ATI,[7] and it does not change the definition of the productive work that Plaintiffs were employed to perform: making steel.

This result is fully in line with Supreme Court precedent applying the integral and indispensable test in FLSA cases. In *Integrity Staffing*, the Court held that antitheft security screenings, which warehouse workers were required to undergo at the end of each shift, were noncompensable postliminary activities because the defendant "did not employ its workers to

---

[6] Plaintiffs' response to this hypothetical further demonstrates that the act of crossing the picket line in and of itself was not a principal activity of Plaintiffs' employment, even in the eyes of the Plaintiffs. If crossing the picket line was "work of consequence performed for an employer" (29 C.F.R. § 790.8), it would be compensable regardless of the mode of transportation.

[7] Particularly since, as noted above, Plaintiff conceded at oral argument that an employee crossing the picket line on foot, or via other non-Strom means, would not be engaged in compensable work time.

8

undergo security screenings, but to retrieve products from warehouse shelves and package those products for shipment to Amazon customers." 135 S. Ct. at 518. In contrast, the Supreme Court held in another case that the time meatpacker employees spent sharpening their knives was compensable, because this activity was integral and indispensable to their productive work of butchering meat. *Mitchell v. King Packing Co.*, 350 U.S. 260, 263 (1956). In *Mitchell*, the record reflected that the knives "must be 'razor sharp' for the proper performance of the work. . . . [A] dull knife would slow down production . . . affect the appearance of the meat as well as the quality of the hides, cause waste and make for accidents." 350 U.S. at 262. Unlike the security screenings in *Integrity Staffing*, and the time Plaintiffs spent traveling across the picket line in this case, the sharpness of a meatpacker's knife is not "two steps removed from the productive activity" for which the employees were hired. *Integrity Staffing*, 135 S. Ct. at 518.

Accordingly, Plaintiffs' allegations fail to state any plausible claim that their time spent commuting across the picket line was compensable under the FLSA.

## II. Counts II, III, and IV: State Law and Unjust Enrichment Claims

For the same reasons that Plaintiffs' Complaint fails to state a claim under the FLSA, it fails to state a claim for relief under Pennsylvania state law, Pennsylvania common law, and Oregon state law.

### A. Count II: Pennsylvania Minimum Wage Act

Unlike the FLSA, for travel time to be compensable under the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), the travel itself must be "part of the duties of the employee." *Espinoza v. Atlas R.R. Constr. LLC*, 657 F. App'x 101, 105 (3d Cir. 2016); *see also* 43 P.S. §§ 333.101–333.115; 34 Pa. Code § 231.1 (defining "hours worked" as including "time spent traveling as part of the duties of the employee during normal working hours"). To be considered

"part of the duties of the employee," courts require "more than simply driving to or from a work site"; instead, they require employees to be "performing work-related tasks, aside from travel, during their travel time." *Espinoza*, 657 F. App'x at 106.

For the same reasons that the Court concluded Plaintiffs cannot establish that commuting across the picket line in Strom's vans was either a principal activity or integral and indispensable to a principal activity of their employment, Plaintiffs also have not shown, and cannot show, that crossing the picket line in Strom's vans was a "duty" of their employment as outlined in *Espinoza*. Count II is therefore dismissed.

### B. Counts III and IV: Unjust Enrichment and Oregon Minimum Wage Act

Plaintiffs did not separately address ATI's Motion to Dismiss regarding Counts III and IV of the Complaint, instead agreeing with ATI that the Oregon Minimum Wage Statute ("OMWS") is "'virtually identical' to federal law on this issue and that Plaintiffs' unjust enrichment claim is entirely based on the FLSA, PMWA, and OMWS claims." (Pls.' Mem. Opp'n to Mot. to Dismiss, ECF No. 35, at 13 n.5 (citing Def. ATI's Mem. Supp. of Mot. to Dismiss, ECF No. 14, at 25–27).) The Court agrees. Because the Court has already concluded Plaintiffs claims fail under the FLSA and the PMWA, their claims under the OMWS and for unjust enrichment under Pennsylvania common law similarly fail. Counts III and IV are dismissed.

### III. Conclusion

For the reasons stated in this Memorandum Opinion, Plaintiffs' allegations fail to state any plausible claim that their time spent commuting across the picket line was compensable under the FLSA, the PMWA, the OMWS, or Pennsylvania common law. Accordingly, the Court declines to adopt the R&R. ATI's Motion to Dismiss, ECF No. 13, is GRANTED in its entirety. Plaintiffs' Complaint is dismissed as to all Defendants. Because the Court concludes any amendment would

10

be futile, this dismissal is with prejudice. All other pending motions are DENIED without prejudice as moot.

/s/ Mark R. Hornak
Mark R. Hornak
United States District Judge

Dated: February 28, 2018

cc: All counsel of record